IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COLONIAL PIPELINE COMPANY )
and COLONIAL TERMINALS )
OPERATING COMPANY, LLC, )
                           )
      Plaintiffs, )
v. )     CIVIL ACTION NO. _____
                           )
PARKER & SON, INC. and )
ATLANTIC SPECIALTY )
INSURANCE COMPANY, )
                           )
      Defendants. )

## COMPLAINT

Plaintiffs Colonial Pipeline Company ("Colonial") and Colonial Terminals Operating Company, LLC ("CTOC") assert the following complaint against Defendants Parker & Son, Inc. ("Parker") and Atlantic Specialty Insurance Company ("Atlantic").

## INTRODUCTION AND SUMMARY OF THIS ACTION

1.     On August 13, 2021, Colonial and Parker entered into an Engineering, Procurement, and Construction Services Agreement (the "EPC Agreement") for Parker to procure, engineer, and construct a new fuel terminal (the "Terminal") for Colonial in Austell, Georgia, including its design, construction, testing, and commissioning (the "Project"). The EPC Agreement, without its voluminous attachments, is attached as Exhibit A. Parker represented to Colonial that it was

experienced in the design, construction, and operation of bulk fuel storage facilities. But Parker mismanaged the Project, resulting in significant delays of the Project and damages to Colonial.

2.     Parker also failed to timely pay its subcontractors and suppliers, as required by the EPC Agreement, and some of those unpaid subcontractors and suppliers have filed mechanic's liens on the Terminal.  Colonial has demanded that Parker comply with its obligation under the EPC Agreement to satisfy or otherwise remove those liens from the Project, but Parker has failed to do so.

3.     Colonial has also demanded that Atlantic comply with its duties under its Payment Bond to defend and hold Colonial and CTOC harmless from the claims, demands, liens, or suits of unpaid subcontractors and suppliers, but it has failed to do so.  At least two of those unpaid subcontractors have filed lawsuits against Colonial or CTOC in state courts.

4.     The EPC Agreement contains a forum selection clause that specifies this Court as the exclusive jurisdiction and venue for any disputes between Colonial and Parker, and the Payment Bond issued by Atlantic incorporates the EPC Agreement and the exclusive forum selection clause in it.  Colonial is therefore bringing this action in the contractually agreed, exclusive forum to seek redress for Parker's breaches of the EPC Agreement and Atlantic's breaches of the Payment Bond and to seek declaratory relief.

2

## PARTIES, JURISDICTION, AND VENUE

5.     Plaintiff Colonial is a Delaware and Virginia corporation with its principal place of business located at 1000 Lake Street, Alpharetta, Georgia 30009. As a result, Colonial is a citizen of Delaware, Virginia, and Georgia for purposes of 28 U.S.C. § 1332.

6.     Plaintiff CTOC is a Delaware limited liability company with its principal place of business located at 1000 Lake Street, Alpharetta, Georgia 30009. CTOC is wholly owned by Colonial Enterprises, Inc., which is a Delaware corporation with its principal place of business located at 1000 Lake Street, Alpharetta, Georgia 30009.  As a result, CTOC is a citizen of Delaware and Georgia for purposes of 28 U.S.C. § 1332.

7.     Defendant Parker is an Alabama corporation.  In its filings with the Georgia Secretary of State, Parker states that its principal place of business is located at P.O. Box 616, Atmore, Alabama, 36504.  However, Parker's principal place of business is located at 88 Nichols Ave, Atmore, Alabama 36502.  As a result, Parker is a citizen of Alabama for purposes of 28 U.S.C. § 1332.

8.     Defendant Atlantic is New York insurance company with its principal place of business located at 605 Highway 169 North, Suite 800, Plymouth, Minnesota 55441.  As a result, Atlantic is a citizen of New York and Minnesota for purposes of 28 U.S.C. § 1332.

9.     There is complete diversity of citizenship between the Plaintiffs and the Defendants in this action.

10.     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

12.     The Court has personal jurisdiction over Defendant Parker pursuant to a forum selection clause contained in Section 18(g)(ii) of the EPC Agreement, pursuant to which Defendant Parker agreed to submit to the exclusive jurisdiction of this Court:

> Litigation of any Dispute shall be brought and conducted exclusively in federal court in the Northern District of Georgia in Fulton County, Georgia, if that court has subject matter jurisdiction; if not, such litigation will be conducted exclusively in the Superior Court of Fulton County, Georgia. EPC hereby knowingly, voluntarily, unconditionally, and irrevocably waives, to the fullest extent permitted by applicable law, any objection which it may now or hereafter have to the venue or the jurisdiction or the convenience of these courts.

The Court also has personal jurisdiction over Parker pursuant to Georgia's Long-Arm Statute, O.C.G.A. § 9-10-91, and the Due Process Clause of the United States Constitution, because it transacted business in this state, purposefully availed itself of the privilege of conducting activities within this state, and directed its activities toward this state.

13.     The Court has personal jurisdiction over Defendant Atlantic pursuant to the forum selection clause above, which is incorporated into the Performance and

Payment Bonds it issued for the Project. The Court also has personal jurisdiction over Defendant Atlantic pursuant to Georgia's Long-Arm Statute, O.C.G.A. § 9-10-91, and the Due Process Clause of the United States Constitution.

14. Venue is proper based upon the forum selection clause in the EPC Agreement, which is also incorporated into the Payment and Performance Bonds. Venue is also proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred within this district, and Defendants are subject to personal jurisdiction is this district.

15. All conditions precedent to the bringing of this action and to recovery of the amounts sought herein have occurred, been performed, or have otherwise been satisfied or waived.

## **GENERAL ALLEGATIONS**

16. Plaintiff Colonial owns and operates a multi-state refined petroleum pipeline system that runs from Houston, Texas to Linden, New Jersey. Colonial's pipeline system provides gasoline, diesel, jet fuel, and heating oil for more than 50 million Americans, as well as for tank farms, critical energy infrastructure, and terminals.

17. Fuel terminals are facilities where large quantities of fuel, usually transported to the terminal by pipeline, are stored in large tanks for future distribution to gas stations and other end users. When a truck is employed to

transport the fuel to the end user, the fuel is delivered to the truck by a loading arm, which draws fuel from a variety of tanks.

18.    Colonial sought to build such a terminal in Austell, Georgia.  The Terminal was intended to receive refined fuel products by pipeline, which would be stored in bulk storage for later distribution to fuel trucks.

19.    On August 13, 2021, Colonial entered into the EPC Agreement with Parker to construct the Terminal.

20.    Parker is an Alabama-based contractor serving the petroleum industry and heavy industrial plants along the Gulf Coast.  Established in 1991 and with over 150 employees at its main office in Atmore, Alabama, Parker offers oil and gas pipeline and tank construction services.  Per its website, Parker holds itself out as a sophisticated and expert contractor that offers "turnkey" services for terminals and refinery construction to get projects "up and running on schedule and within budget by minimizing mobilization fees, and scheduling conflicts for multi-trade sites."

21.    The EPC Agreement required Parker to execute the Project, from start to finish, and had an original contract value of $22.4 million.  The following five subsections of the EPC Agreement are particularly relevant to this dispute:

    a.    ***Section 2.4, Substantial Completion***: Section 2.4 of the EPC Agreement sets forth in detail the requirements for Substantial Completion, including that all work must be completed except for punch list items and that

all components and systems must be functionally tested and ready for calibration and commissioning.   Importantly, pursuant to Section 2.4, beneficial occupancy is not sufficient for Substantial Completion.

b.      ***Section 3.2, Change Orders Requested by EPC***:  Section 3.2 describes in detail (a) the limited circumstances under which Parker would have the right to request a change order, and (b) the procedural and notice requirements for making such a request.   This section is relevant because change order requests are in dispute in this action.

c.      ***Section 5.5, Withholding***: Section 5.5 provides Colonial with the right to withhold payment in an amount and to such extent as reasonably necessary to protect Colonial from loss for reasons including Parker's defective work, liens, or other encumbrances on the Project; Parker's failure to make payments to its subcontractors; any other costs or liabilities that Colonial incurred or will incur for which Parker is responsible; and any other reason for which Colonial is entitled to withhold payment under the EPC Agreement.   Section 5.6 of the EPC Agreement similarly grants Colonial broad rights of setoff.

d.      ***Section 10.13, Claims and Liens***:  Section 10.13 requires Parker to obtain the release or dismissal of any laborer's, materialman's, or mechanic's lien or any other lien, suit, or claim so that the work, the project

site, and all Colonial property is free of liens, suits, or claims.  If Parker does not, Section 10.13 provides that Colonial may pay all sums necessary to obtain releases of any liens, suits, or claims and deduct all such sums from any amounts owed to Parker and/or require Parker to reimburse Colonial.

e.     ***Section 11.3, Lien Indemnification***: Section 11.3 similarly requires Parker, at Parker's sole cost and expense, to remove and discharge by payment, bond, or otherwise any lien or encumbrance within ten days after the filing of a lien or encumbrance.

## PARKER'S MISMANAGEMENT AND FAULTY WORK

22.     Parker mismanaged the design and construction of the Project by among other things failing to effectively staff the Project, failing to effectively subcontract work on the Project, and failing to effectively manage or supervise its staff and subcontractors.  Parker's poor performance and mismanagement caused significant delays and damages to Colonial.

23.     The work performed by Parker, such as the tubing and electrical wiring, was often defective or inadequately designed.  This required Parker to rework portions of the Project.  It also forced Colonial to use its own resources, including engineering and operations support, to help remediate the faulty work.  In some instances, Colonial was forced to directly retain outside contractors for repair work.

8

24.     Among the many parts of the Project that had to be repaired or reworked, the electrical wiring on the Project was not installed correctly.  Parker had to try several times to correct its own faulty electrical wiring work. As a result of these ongoing issues, the electrical wiring work on the Project became severely behind schedule, requiring Colonial to directly retain and pay for its own electrical contractor.

25.     Similarly, Parker's work relating to the ethanol pumps was defective and resulted in significant additional remediation work.  The ethanol pumps, and thus the truck lanes, were inoperative while being repaired and commissioned.  As a result of this downtime, Colonial was at times not able to consistently meet its main customer's throughput needs and targeted capacity, which put Colonial's core commercial contract at risk and damaged Colonial.

26.     Colonial was damaged as a result of Parker's mismanagement of the work and Parker's faulty design and construction of the Project, including by the examples discussed above, in an amount to be proven at trial.

### PARKER DID NOT TIMELY COMPLETE THE PROJECT

27.     The EPC Agreement required Parker to achieve substantial completion by November 11, 2022.

28.     Parker first provided Colonial with a notice of substantial completion on June 22, 2023.  This was over seven months after the deadline for substantial

completion in the EPC Agreement.  Colonial rejected this attempted notice because items were still incomplete.

29.    Over a month later, on July 26, 2023, Parker sought to submit a supplemental notice of substantial completion.  In the supplemental notice, Parker contended that all remaining work was minor punch list work that was not required for substantial completion.

30.    Colonial responded to Parker's supplemental notice with a letter dated July 28, 2023 detailing the work that was necessary to achieve substantial completion but was still not complete.  Parker did not respond to this letter from Colonial.

31.    Due to Parker's poor performance and delays, the Terminal was still not fully functional over a year after the deadline for substantial completion.

32.    Section 2.5 and Schedule E-2 of the EPC Agreement contain a liquidated damages provision which provides that Parker shall pay Colonial $10,000 per day for each day that substantial completion is delayed.  Liquidated damages are capped at $600,000, which represents 60 days of delay.

33.    Parker has contended that the liquidated damages provision in the EPC Agreement is not effective because of an alleged clarification in Parker's proposal for the Project.  Colonial disagrees with this contention but, to the extent this is true, then Parker is liable for all actual damages incurred by Colonial as a result of

Parker's delays in completing the Project, and those actual damages are more than the amount of liquidated damages set forth in the EPC Agreement.

## PARKER'S FAILURE TO PAY ITS SUBCONTRACTORS AND THE RESULTING LIENS ON THE PROJECT

34.     The EPC Agreement established that Colonial would furnish Parker with progress payments throughout its work on the Project.

35.     Generally speaking, in the construction industry, a progress payment is a partial payment made to a contractor at a predefined completion percentage.  In an EPC Project, the contractor is responsible for all aspects of design and construction, and these progress payments are part of the fixed contract price, which encompasses all of the contractor's labor costs, materials costs, overhead costs, and subcontractor and supplier costs.

36.     During the Project, Parker failed to pass through payments received from Colonial to Parker's subcontractors and suppliers.

37.     At least six liens were filed on the Terminal by Parker's subcontractors or suppliers.  Upon information and belief, these liens have been filed even though Colonial has paid Parker for these lien claimants' work.  This suggests that Parker misappropriated payments from Colonial or otherwise failed to properly pass through payments from Colonial to Parker's subcontractors and suppliers.

38.     To date, two subcontractors have initiated lawsuits against Parker, seeking to recover more than $1.1 million.  In these two lawsuits against Parker,

Colonial or CTOC was also named as a defendant, forcing Colonial and CTOC to incur attorneys' fees and other costs in defending against those lawsuits.

39.     Section 10.13 of the EPC Agreement requires Parker to obtain the release and discharge of any liens filed on the Project and, if it does not, entitles Colonial to pay such sums as are necessary to obtain the discharge and release of any such liens and to deduct those amounts from Parker and/or seek cash reimbursement from Parker.

40.     Section 11.3 of the EPC Agreement similarly requires Parker, at its sole expense, to remove and discharge by payment, bond, or otherwise any lien or encumbrance within ten days after the filing of a lien or encumbrance.  More than ten days have passed since these liens were filed on the Project, but Parker has not discharged or removed them by payment or otherwise.

41.     The EPC Agreement was between Colonial and Parker, but CTOC owns the Terminal, so CTOC's property is now encumbered by liens.

## PARKER'S IMPROPER AND OVERSTATED LIEN

42.     The vast majority of Parker's work on the Project was performed prior to March 31, 2023.

43.     On April 10, 2023, Parker executed an interim lien waiver pursuant to O.C.G.A. § 44-14-366(c), which was effective for all work performed through March 31, 2023.

44.     Parker did not file an Affidavit of Nonpayment pursuant to O.C.G.A. § 44-14-366(g)(2) within 90 days of executing that lien waiver.

45.     Thus, pursuant to O.C.G.A. § 44-14-366(g)(1), that lien waiver became final and binding, and therefore it waived any lien rights Parker may have had for work performed up to and through March 31, 2023.

46.     Despite having waived nearly all of its lien rights, on March 11, 2024, Parker filed a $14.1 million lien on the Terminal.  Upon information and belief, this lien cannot be justified, let alone based on work performed after March 31, 2023, and therefore this lien is materially and intentionally overstated and is invalid.

**COLONIAL WAS FORCED TO SUPPLEMENT PARKER'S WORK**

47.     During the course of Parker's design and construction of the Project, Colonial discovered that some of Parker's work was deficient or defective, and/or it was not being completed in a timely manner.

48.     Colonial therefore had to hire another contractor, Asimpa, to supplement Parker's work and to perform work within Parker's original scope of work.

49.     Colonial is entitled to deduct the amounts it paid to Asimpa from the amounts, if any, due to Parker under the EPC Agreement, or alternatively to recover those amounts from Parker in this action.

## PARKER OWES COLONIAL FOR REMOVAL OF THE "DIRT PILE"

50.    When Parker planned the Project, it failed to account for any displacement from the tank foundations when calculating its "cut and fill balance" for the earthwork (dirt) for the Project.

51.    On a construction site, it is important to balance the amount of soil removed in certain parts of the site (cut) with the amount of soil that must be added to certain parts of the site (fill).  Calculating the cut-fill balance correctly is crucial because too much need for fill and not enough cut will require a contractor to bring in dirt from off-site, which is expensive.  Conversely, where more dirt is cut from certain parts of a site than is needed to fill other parts of a site, there will be an excess amount of dirt, which must be removed at a cost.

52.    When Colonial discovered that the concrete foundations planned by Parker would generate large amounts of excess soil, Colonial recommended that Parker use "helical foundation piles," which would generate little or no excess soil.

53.    Parker ignored Colonial's recommendations and chose to proceed with concrete foundations.  As Colonial had warned, this generated large amounts of excess soil.

54.    Colonial worked with Parker on a solution for this excess dirt and agreed to allow Parker to store the excess dirt at the back of the Terminal, with the

understanding that storage there would be a short-term, interim measure, and that Parker would be responsible for the costs associated with the removal of this dirt.

55.    The construction phase of the Project has now passed, but this excess dirt remains on the site.  Colonial's initial cost estimates for removing this dirt are $600,000.  In addition, Colonial is incurring costs for ongoing maintenance and inspection of the dirt pile.

56.    Section 10.12 of the EPC Agreement, entitled "Condition of the Premises," states as follows:

> EPC will (i) keep the Project Site and other Company Property clean as it performs the Work, and (ii) at reasonable intervals, remove all Waste from the Project Site and other Company Property. Upon completion of the Work, EPC will: (i) remove from the Project Site all Waste and all tools, equipment, machinery and vehicles belonging to EPC and its Subcontractors used in connection with the Work; (ii) return in clean and good condition any and all tools, equipment, machinery and vehicles furnished by Company; and (iii) leave the Work and the Project Site free and clear from obstructions and hindrances. If EPC fails to keep the Project Site or other Company Property clean to the reasonable satisfaction of Company, Company may perform such work and charge EPC for all reasonably related costs.

57.    Pursuant to Section 10.12, Parker is liable for expenses of removing the excess dirt from the Project and the costs of maintenance and inspection of it.

## ATLANTIC'S FAILURE TO DEFEND COLONIAL FROM CLAIMS AND LIENS OF UNPAID SUBCONTRACTORS AND SUPPLIERS

58.    Atlantic, as surety, and Parker, as principal, issued a Payment Bond and a Performance Bond for the Project, naming Colonial as the obligee.  *See* Exhibit B.

59.     Sections 3 and 4 of the Payment Bond provide that Atlantic is required to defend, indemnify, and hold Colonial harmless from any claims, demands, liens, or suits of subcontractors and suppliers to Parker.  *Id*. at 6.

60.     As required by the Payment Bond, Colonial notified Atlantic about the liens filed against the Terminal by subcontractors and requested that Atlantic defend, indemnify, and hold harmless Colonial for these liens.

61.     For almost six months, Atlantic did not respond to the written notices from Colonial, nor take any action to defend, indemnify, or hold Colonial harmless from the claims, demands, liens, and suits of subcontractors and suppliers against Colonial, CTOC, and the Terminal.

62.     Atlantic has still not defended, indemnified, and held Colonial harmless from all of the claims, demands, liens, and suits of subcontractors and suppliers against Colonial, CTOC, and the Terminal.

## **CLAIMS FOR RELIEF**

### **COUNT ONE**
### **(Colonial Claim for Breaches of Contract by Parker)**

63.     Colonial realleges and incorporates by reference the allegations contained in paragraphs 1 through 62 above as if they were fully set forth herein.

64.     The EPC Agreement between Colonial and Parker was and remains a valid and enforceable contract.

16

65.    The EPC Agreement required Parker to achieve substantial completion by November 11, 2022.

66.    Parker breached the EPC Agreement by failing to substantially complete the Project by November 11, 2022.

67.    As a result of Parker's breach, Colonial has been damaged in the amount of $600,000, which represents the maximum amount of liquidated damages agreed to by the parties.

68.    Alternatively, Parker is liable to Colonial for the actual damages resulting from Parker's delays to the completion of the Project.  Those damages would exceed $600,000.

69.    As a result of Parker's defective and faulty work, Colonial had to retain outside contractors at Colonial's expense to remediate that defective work.   In addition, Colonial's own engineering and internal support teams had to assist with these remediation efforts, further increasing Colonial's costs.

70.    Similarly, downtime resulting from Parker's faulty work left Colonial at times unable to consistently meet throughput needs and targeted capacity from its main customer, and Colonial in turn suffered damages, including placing the core commercial contract with Colonial's anchor tenant at risk.

71.    Parker is liable to Colonial for all damages incurred by Colonial as a result of Parker's breaches of the EPC Agreement.

17

## COUNT TWO
**(Colonial Claim for Breach of Contract against Parker Because of Liens)**

72.     Colonial realleges and incorporates by reference the allegations contained in paragraphs 1 through 62 above as if they were fully set forth herein.

73.     The EPC Agreement required Parker, at its sole expense, to remove and discharge by payment, bond, or otherwise any lien or encumbrance within ten days after filing of a lien or encumbrance.

74.     Six different subcontractors have filed lien claims on the Terminal, with the first having been filed on July 10, 2023, and the most recent having been filed on February 27, 2024.

75.     Far more than ten days have passed since each lien was filed by each subcontractor.

76.     Parker has breached the EPC Agreement by failing to timely pay its subcontractors and suppliers and by failing to remove or discharge all of these liens.

77.     In addition, two subcontractors have initiated lawsuits against Parker and named Colonial or CTOC as an additional defendant in those lawsuits.

78.     Pursuant to the EPC Agreement, Colonial is entitled to pay the claims of unpaid subcontractors and suppliers and to deduct the amounts of those payments from any sums that would otherwise be due to Parker, or alternatively, to seek reimbursement from Parker for those amounts.

79.     Due to Parker's failure to pay its subcontractors and suppliers, Colonial has and will incur damages, losses, costs, and/or expenses, including attorneys' fees, consultant fees, and litigation expenses, in defending and settling these liens and the lawsuits relating to them.

80.     Pursuant to Sections 10.13 and/or 11.3 of the EPC Agreement, Parker is liable to Colonial for all such damages, losses, costs, and/or expenses, including attorneys' fees, consultant fees, and litigation expenses, in an amount to be determined at trial.

## COUNT THREE
### (Colonial Claim for Breach of Contract Because of Dirt Pile)

81.     Colonial realleges and incorporates by reference the allegations contained in paragraphs 1 through 62 above as if they were fully set forth herein.

82.     Under the EPC Agreement, Parker was required to remove any waste, obstructions, and hinderances upon completion of the Project.

83.     Due to Parker's failure to properly balance the amount of dirt that needed to be excavated on the site with the amount of dirt needed to fill in other areas, a large amount of excess dirt remains on the Project site.

84.     By creating significant amounts of waste dirt and not removing it, Parker breached its contract with Colonial.

85.     As a result of Parker's breaches, Colonial has been damaged.

86.    Parker is liable to Colonial for its breaches of the EPC Agreement, in an amount to be determined at trial.

## COUNT FOUR
### (CTOC Declaratory Judgment to Declare Parker's Lien Invalid)

87.    CTOC realleges and incorporates by reference the allegations contained in paragraphs 1 through 86 above as if they were fully set forth herein.

88.    The vast majority of Parker's work on the Project was performed prior to March 31, 2023.

89.    As discussed above, on April 10, 2023, Parker executed an interim lien waiver pursuant to O.C.G.A. § 44-14-366(c).  Parker did not file an Affidavit of Nonpayment pursuant to O.C.G.A. § 44-14-366(g)(2) within 90 days of executing that lien waiver, so Parker's lien waiver became final and binding.  Thus, Parker waived any lien rights it may have had for work performed up to and through March 31, 2023.

90.    Despite having waived nearly all of its lien rights, on March 11, 2024, Parker filed a $14.1 million lien on the Terminal.

91.    Upon information and belief, this lien cannot be justified, let alone based upon work performed after March 31, 2023, and therefore this lien is materially and intentionally overstated.

92.    In addition, Colonial is not indebted to Parker in any amount.

93.    Therefore, the lien filed by Parker against the Terminal is invalid.

94.     CTOC is entitled to a declaratory judgment in its favor declaring that Parker's lien is invalid and unenforceable.

## COUNT FIVE
### (Colonial Claim Against Atlantic for Breach of Payment Bond)

95.     Colonial realleges and incorporates by reference the allegations contained in paragraphs 1 through 94 above as if they were fully set forth herein.

96.     Pursuant to the Payment Bond that Atlantic issued for the Project, Atlantic is contractually liable to defend, indemnify, and hold Colonial harmless from any claims, demands, liens, or suits of subcontractors and suppliers.

97.     Six different subcontractors have filed liens on the Project.

98.     As required by the Payment Bond, Colonial notified Atlantic about the subcontractor liens filed against the Project and requested that Atlantic defend, indemnify, and hold harmless Colonial from these liens.

99.     For instance, Colonial provided notice to Atlantic by letter dated August 22, 2023, of liens filed by Miller Electrical Contractors, Inc. and MAREN Construction.  Colonial provided notice to Atlantic by letter dated September 7, 2023 of a lien filed by AIS Infrastructure LLC f/k/a Brad Cole Construction Co., Inc.

100.     In those letters from August and September 2023, Colonial expressly requested that Atlantic defend, indemnify, and hold harmless Colonial pursuant to Article 4 of the Payment Bond.  Atlantic did not respond in any manner to Colonial's

letters until March 2024, nor take any other any actions to defend, indemnify, and hold Colonial harmless from those liens, as required by the Payment Bond.

101.   Atlantic has failed and refused to defend, indemnify, and hold Colonial harmless from all claims, demands, liens, and suits by subcontractors and suppliers to Parker on the Project.

102.   Atlantic has, therefore, failed to comply with its obligations under the Payment Bond.

103.   As a result of Atlantic's breaches, Colonial has been damaged.

104.   Atlantic is therefore liable to Colonial for damages, in an amount to be determined at trial.

## COUNT SIX
### (Colonial Claim Against Atlantic for Bad Faith Denial)

105.   Colonial realleges and incorporates by reference the allegations contained in paragraphs 1 through 104 above as if they were fully set forth herein.

106.   Colonial repeatedly notified Atlantic of the subcontractor liens filed against the Terminal and demanded that Atlantic remove or discharge said liens per its obligations under the Payment Bond.

107.   Colonial has complied in all respects with the conditions for performance by Atlantic in the Payment Bond and is entitled to payment or removal of all liens against the Terminal.

108.    Colonial is entitled to defense, indemnity, and to be held harmless from all claims, demands, liens, and suits by subcontractors and suppliers to Parker on the Project.

109.    Over sixty days have passed since Colonial demanded performance under the Payment Bond, but Atlantic has willfully and knowingly failed to comply with its obligations under the Payment Bond, and such refusal constitutes bad faith in the performance of Atlantic's obligations under O.C.G.A. § 10-7-30.

110.    Accordingly, Colonial seeks and is entitled to its attorneys' fees and a 25% statutory penalty.

## COUNT SEVEN
### (Colonial and CTOC Claim for Attorneys' Fees Against Parker and Atlantic)

111.    Colonial and CTOC reallege and incorporate by reference the allegations contained in paragraphs 1 through 110 above as if they were fully set forth herein.

112.    Parker has acted in bad faith, has been stubbornly litigious, and has caused Colonial and CTOC unnecessary trouble and expense, all of which justify the award of attorneys' fees to Colonial and CTOC under O.C.G.A. § 13-6-11.

113.    Atlantic has acted in bad faith, has been stubbornly litigious, and has caused Colonial and CTOC unnecessary trouble and expense, all of which justify the award of attorneys' fees to Colonial and CTOC under O.C.G.A. § 13-6-11.

## **PRAYER FOR RELIEF**

WHEREFORE, Colonial and CTOC request that this Court:

a)      Enter judgment in favor of Plaintiff Colonial, and against Defendant Parker, on Counts One, Two, and Three of this Complaint, in an amount to be proven at trial exceeding $600,000, together with interest at the maximum rate allowed by law.

b)      Enter judgment in favor of Plaintiff CTOC, and against Defendant Parker, on Count Four declaring Parker's lien invalid.

c)      Enter judgment in favor of Plaintiff Colonial, and against Defendant Atlantic, on Counts Five and Six in an amount to be determined at trial, inclusive of statutory penalties and attorneys' fees.

d)      Enter Judgment in favor of Plaintiffs and against Defendants Parker and Atlantic on Count Seven of this Complaint, granting Plaintiffs their attorneys' fees, costs, and expenses.

e)      Impose all costs of this action on Defendants; and

f)      Grant Plaintiffs such other relief as this Court deems just and proper.

Respectfully submitted this 30th day of April 2024.

/s/ R. Lee Mann III
R. LEE MANN III
Georgia Bar No. 469139
RANDALL F. HAFER
Georgia Bar. No. 316637

GAUTAM Y. REDDY
Georgia Bar No. 757546
PARKER A. LEWTON
Georgia Bar No. 747767
PRESTON W. EHLERS
Georgia Bar No. 532876
KILPATRICK TOWNSEND
      & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 541-3291

Emails:
LMann@ktslaw.com
RHafer@ktslaw.com
GReddy@ktslaw.com
PLewton@ktslaw.com
PEhlers@ktslaw.com

*Counsel for Plaintiffs Colonial Pipeline
Company and Colonial Terminals
Operating Company LLC*

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing has been prepared in 14-point Times New

Roman font in accordance with Local Rule 5.1(C).

Dated:  April 30, 2024.

/s/ R. Lee Mann III
  R. Lee Mann III